UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER PARKER,

      Plaintiff,

v.                                       Case No. 8:07-CV-436-T-MAP

MICHAEL J. ASTRUE,
Commissioner of Social
Security

      Defendant.
_____/

## **ORDER**

Pursuant to 5 U.S.C. § 552(A) and 28 U.S.C. § 1361, the Plaintiff seeks a writ of mandamus and declaratory relief.  Readily admitting he failed to exhaust his administrative remedies, Plaintiff complains that the Social Security Administration ("SSA") recouped overpayments from him without explaining why the overpayments occurred and seeks entry of an order directing the SSA to reimburse him for the withheld amounts.  *See* doc. 13, p. 2, ¶ 4.   Defendant seeks dismissal of Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust his administrative remedies and failure to meet the standard for mandamus.[1]   At this juncture, the Defendant has complied with my prior order directing it to supplement the record by  filing a certified copy of the Social Security Administration's administrative record.  *See* doc. 18.  After consideration, Defendant's motion to dismiss is granted

---

[1]  Alternatively, the Defendant claims Plaintiff should seek a remedy not against the SSA, but against his former wife who allegedly received and spent the Plaintiff's social security benefits while he was incarcerated.

for the reasons set forth below.[2]

*A. Background*

Now that the administrative record is part of the Court record I will review the facts again, this time including the newly revealed facts gleaned from the administrative record.  Plaintiff, a recipient of Social Security Supplemental Security Income benefits ("SSI"), alleges his probation officer called the Social Security Administration in 2003 to advise he was going to jail so that his benefits could be discontinued.[3]  Based on his conversation with his probation officer, Plaintiff believed his benefits were discontinued during his incarceration.  Unbeknownst to Plaintiff, however, during his incarceration his estranged wife Christina Parker opened a joint bank account in their names and directed the SSA to deposit her husband's benefits checks directly into the account.  Apparently, Mrs. Parker used her husband's benefits deposited into the joint account by the SSA for her own benefit.  Plaintiff visited a Social Security branch office in March 2005 after his release from jail to request that his benefits be resumed, and claims he was advised there that because his benefits were paid to him during his incarceration he had been overpaid.  He alleges he "sought an appeal" but was "told he could not appeal this determination."  Complaint, ¶ 8. Thereafter, in April 2006, Plaintiff's attorney sent a letter to the SSA requesting information about the Plaintiff's overpayments.  *See* doc. 13, ex. A.  The SSA never responded, and Plaintiff filed this action.  Plaintiff, through his attorney, now argues that he has a "clear right to be advised by the

---

[2]  The parties consented to my jurisdiction pursuant to 28 U.S.C. 636(c) and Fed.R.Civ.P. 73 (doc. 12).

[3]  Plaintiff purports to receive disability benefits in his Complaint.  The administrative record, however, reveals that he actually receives SSI benefits based on his application of August 5, 1997 (R. 271-282).

Defendant, not only of the Defendant's determinations regarding overpayment, but also to be provided with a reasonable explanation as to how the alleged overpayment occurred" (doc. 13, p. 2, ¶ 4).

The administrative record reveals a chronology of events between Plaintiff and the SSA before, during, and after Plaintiff's incarceration. Generally, the record shows that Plaintiff was incarcerated from February 20, 2004 through October 12, 2004, and from December 21, 2004 through March 10, 2005, and the overpayment periods were from October 2000 through December 2000 in the amount of $1,536 (R. 265), January and February 2002 in the amount of $1,472.50 (R. 194-95), and November 2003 through March 2004 in the amount of $2,796.00 (R. 148).[4]

The record shows that the SSA repeatedly advised Plaintiff of these overpayments, and advised him of his rights to information regarding the SSA's determination that he had been overpaid and of his rights to appeal the SSA's determinations. The first time Plaintiff received overpayments of SSI benefits (October 2000-December 2000), the SSA sent Plaintiff a letter on December 18, 2000, advising him that he had been overpaid from October 2000 to December 2000 in the amount of $1,536.00 (R. 265). The letter provided a detailed explanation of the overpayment and explained that if Plaintiff disagreed with SSA's overpayment determination he had sixty days to appeal and three ways to do so: by case review, informal conference, or formal conference (R. 265-269). The letter also explained that he could find a "friend lawyer or someone else" to help him

---

[4] The affidavit of SSA program analyst Tonya M. Neyenhouse supports the administrative record too. *See* doc. 11-2. Her affidavit states that Plaintiff filed a new application for benefits on January 2, 2002, that he was denied benefits due to excess income, that he reapplied and was awarded benefits effective April 2002, that he "double negotiated" his SSI benefits checks in January and February 2002, resulting in overpayment, and that he was a fugitive felon from November 2003 through February 2004, again resulting in overpayment.

3

with his appeal, including groups that can help him find a lawyer or give him free legal services (R. 266).         After Plaintiff was overpaid the second time (January -February 2002), the SSA sent Plaintiff two more letters explaining the overpayment.  The first letter, titled "notice of award" informed Plaintiff that he was eligible to receive SSI benefits based on his January 2, 2002, application and that it would be withholding part of his SSI benefits checks to get back the money he was overpaid (after April 2002, his overpayments owed were $1,472.50) (R. 194-200).  The second letter, titled "Notice of change in payment," informed Plaintiff that his SSI payments were being raised and that it was withholding part of his checks to get back money he was overpaid (after January 2003, his overpayments left were $981.30) (R. 188-191).  Like the earlier letters, this letter advised Plaintiff of his rights to appeal if he disagreed with the decision and explained his appeal options.  The SSA corresponded to Plaintiff on April 16, 2003, and on May 7, 2003, concerning his overpayments  (R. 161-166, R. 176-178); both times   indicating he still owed $815.70 in overpayments, and the May letter advised him of his rights to review the information in its records it used to make its decision and to appeal its decision if he disagrees with it.  (R. 161-164).  As before, the letters informed Plaintiff of groups that could help him with his appeal at no charge to him (R. 163, 191, 197, 266).         With regard to the third overpayment period (November 2003-March 2004), the SSA sent a letter on March 23, 2004, advising him that it was discontinuing his SSI payments effective November 2003 due to his violating the conditions of his parole or probation and the warrant for his arrest issued on November 24, 2003 (R. 151-153).  This letter advised that the SSA would be stopping his payments beginning May 2004, that Plaintiff could appeal its decision, and that it may be in touch with him later about payments previously made (R. 152).  The SSA sent a letter to Plaintiff on July 14, 2004,  advising that it calculated his overpayment of SSI

benefits as $2,796.00, and sent Plaintiff six letters demanding payment for the overpayment between July 2004 and February 24, 2005 (R. 148, 145, 141, 138, 134, 131).

When Plaintiff was discharged from prison on March 10, 2005, he filed a new application for benefits on March 14, 2005, and began receiving benefit payments in April 2005.  The SSA awarded Plaintiff benefits, and advised him in a letter dated September 5, 2005, that it would be withholding part of his checks to get back the money he was overpaid (R. 82).  The letter advised that he could review the information upon which SSA based its decisions, that he could appeal its decision, and that his local Social Security office has a list of groups available to assist him with his appeal if need be (R. 85).  Thereafter, the SSA withheld the full amount of Plaintiff's benefits from April through July 2005, withheld ten percent of his benefits starting in August 2005, and SSA completed recoupment of the $2,796 in overpayments in April 2007 (doc. 11-2, R. 37, 42).

### B.  Standard of Review

Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is appropriate when the court lacks statutory or constitutional authority to adjudicate a case.  The party invoking jurisdiction bears the burden of producing necessary facts to establish subject matter jurisdiction.  *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).  Subject matter can be challenged facially or factually.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  While facial attacks require the court to see whether plaintiff's complaint sufficiently alleges a basis for subject matter jurisdiction and the court accepts all factual allegations as true, factual attacks challenge the "existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*  A factual attack on subject matter jurisdiction is an attack on the "trial court's jurisdiction – its very power to hear the case," and the presumption of truthfulness afforded a plaintiff's allegations under Rule 12(b)(6) does not

5

attach.  In a factual attack, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56, and the existence of disputed material facts will not preclude the trial court from weighing the evidence and evaluating for itself the merits of the jurisdictional claims.  *Id.  See also Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir. 1999) ("when faced with factual disputes regarding subject matter jurisdiction the district court serves as the fact-finder and may weigh the evidence, provided that the challenge to subject matter jurisdiction does not implicate an element of the cause of action").

Jurisdiction over cases arising under the Social Security Act exists under 42 U.S.C. §405(g) and (h) and the Mandamus Act, 28 U.S.C. § 1361.  Section 405(g) allows for judicial review by commencement of a civil action within sixty days of a "final decision of the Commissioner of Social Security" and § 405(h) specifically bars judicial review except as otherwise provided in the Act.  The Commissioner may waive the exhaustion requirement when deemed futile, and in "certain special cases" a court may deem it inappropriate to defer to the Commissioner's discretion and may exercise jurisdiction despite a lack of exhaustion.  Such a case exists when a plaintiff makes a "procedural challenge wholly "collateral" to his claim for benefits, and where he makes a colorable showing that his injury cannot be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies."  *Heckler v. Ringer*, 466 U.S. 602, 617-28 (1984) (citing *Matthews v. Eldridge*, 424 U.S. 319, 330-332 (1976)).  Alternatively, another basis for subject matter jurisdiction is the Mandamus Act, providing that a "district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. §1361.  Mandamus relief is an extraordinary remedy only appropriate when plaintiff has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty. *Ringer,* at 616.

6

*C. Discussion*

In my previous order I advised the parties that this Court may also lack subject matter jurisdiction under the Mandamus Act. *See Cash v. Barnhart*, 327 F.3d 1252, 1257-58 (11th Cir. 2003) (court determined that the ALJ had no duty to provide Cash with a hearing, and there was no mandamus jurisdiction). Although the Supreme Court has twice declined to rule on the question of whether 42 U.S.C. § 405(h) wholly precludes the assertion of mandamus jurisdiction over claims against the Commissioner, the Eleventh Circuit has instead assumed that mandamus jurisdiction is not barred by 405(h) and denied a motion for writ of mandamus as inappropriate because plaintiff had an alternative "avenue of relief" in administrative appellate remedies. *See Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 456 n.3 (1999); *Heckler, supra,* at 616; *Lifestar Ambulance Service, Inc. v. United States*, 365 F.3d 1293, 1295 n.3 (11th Cir. 2004). Now that the Defendant has filed a copy of the SSA's administrative record, it is clear that mandamus relief is not proper here since the SSA does not owe any duties to Plaintiff.[5] The administrative record demonstrates that the SSA rendered initial determinations that it had overpaid Plaintiff SSI benefits, and it advised Plaintiff of his rights to appeal the initial determinations numerous times. In fact, the SSA carefully and repeatedly advised Plaintiff of his overpayments, advised him of his rights to review its information upon which it based its decision that Plaintiff had been overpaid, and most importantly outlined his options for appealing its determinations. While Plaintiff alleges that an unnamed individual at an unnamed Social Security office advised him that he could not appeal the

---

[5] Although the Plaintiff alleges that Defendant "has refused to make a decision or issue an order from which the Plaintiff could exhaust his administrative remedies," in a factual attack upon subject matter jurisdiction, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56, and the existence of disputed material facts does not preclude this Court from weighing the evidence and evaluating the merits of the jurisdictional claims. *See Lawrence, supra,* 919 F.2d at 1528-29; *Scarfo, supra,* 175 F.3d at 957.

overpayment determinations, the regulations provide that misinformation does not circumvent the need to exhaust administrative procedures.  Even assuming Plaintiff received erroneous oral advice, he could still resort to the administrative remedies provided in the SSA regulations (as set forth in SSA's numerous correspondence to him) and file a written application for reconsideration asking that the filing date be deemed the date of the erroneous advice.  *See* 20 C.F.R. § 404.902(j) ("An initial determination is binding unless you request a reconsideration within the stated time period"); 42 U.S.C. § 1383(e)(5) and 20 C.F.R. § 416.351 (2007) (concerning misinformation given, causing beneficiary not to file on time); *Schweiker v. Hansen*, 450 U.S. 785 (1981) (holding that erroneous advice does not eliminate need to comply with Commissioner's written regulations).   As the Commissioner asserts, Plaintiff had other avenues for disputing the overpayments and recoupments and a writ of mandamus would essentially override the Commissioner's regulations.

    *D.  Conclusion*

    Accordingly, after reviewing the pleadings and record evidence, I find that dismissal for lack of subject matter jurisdiction is appropriate for the reasons discussed herein.  It is hereby

    ORDERED:

    1.      Defendant's motion to dismiss (doc. 11) is GRANTED.

    2.      The Clerk of Court is directed to enter judgment for Defendant and close this case.

     IT IS SO ORDERED in Tampa, Florida on March 12, 2008.


                                                    _Mark a. Pizzo_
                                                    MARK A. PIZZO
                                                    UNITED STATES MAGISTRATE JUDGE